IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LORRINE ADAMORE,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-0564 |
| | § | |
| SOUTHWEST AIRLINES CORP., | § | |
| CUSTOMER SERVICE, CHRISTINA DOE, | § | |
| THE CITY OF HOUSTON, ANISE | § | |
| PARKER, TRANSPORTATION SECURITY | § | |
| ADMINISTRATION, DEPARTMENT OF | § | |
| HOMELAND SECURITY, WM. P. HOBBY | § | |
| AIRPORT, FEDERAL AVIATION | § | |
| ADMINISTRATION, J. RANDOLPH | § | |
| BABBITT, CATHERINE EMERSON, | § | |
| DAVID WEINGART, DAVID GRIZZIE, | § | |
| SASHA JOHNSON, FANNY RIVERA, | § | |
| MARGARET GILLIGAN, CHRISTA | § | |
| FORNAROTTO, PAULA LEWIS, MARY | § | |
| CASE, JANE DOE, JOHN DOE, | § | |
| ANGEL MORENO, ERIC HOLDER, JR., | § | |
| RICK PERRY, GENE KELLY, | § | |
| DEPARTMENT OF TRANSPORTATION, | § | |
| JOHN DOE TSA, MARGO SCHLANGER, | § | |
| and MARILEE MCINNIS, | § | |
| | § | |
| Defendants. | § | |

---

[1] "Bernice Adamore (Deceased)" was named by Plaintiff Adamore as an additional plaintiff. Federal Rule of Civil Procedure 17(b) provides that "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located." FED. R. CIV. P. 17(b)(3). Texas law does not allow suits by or against the deceased. *See* Stinson v. King, 83 S.W.2d 398, 399 (Tex. Civ. App.-- Dallas 1935, writ dism'd w.o.j.) ("[S]uits can be maintained by and against only parties having an actual or legal existence . . . . No suit can lawfully be prosecuted save in the name of a plaintiff and against a defendant having a legal entity either as a natural or as an artificial person. There must be a real plaintiff and a real defendant."); *see also* Bluebonnet Savings Bank v. Jones Country, Inc., 911 S.W.2d 871, 880 (Tex. App.--Beaumont 1995), *rev'd on other grounds*, 920 S.W.2d 679 (Tex. 1996). Accordingly, the case is properly captioned with the name of only Lorrine Adamore as Plaintiff.

MEMORANDUM AND ORDER

Pending are: Defendants City of Houston's, Mayor Annise Parker's, and Mary Case's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), and, in the Alternative, Motion for A More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e) (Document No. 20); Defendants Southwest Airlines, Co.'s, Gary Kelly's, and Marilee McInnis's Motion to Dismiss and, in the Alternative, Motion for A More Definite Statement (Document No. 21); Defendant Rick Perry's Motion to Dismiss and in the Alternative Motion for More Definite Statement (Document No. 39); and Motion to Dismiss by Defendants U.S. Department of Homeland Security ("DHS"), Transportation Security Administration ("TSA"), Federal Aviation Administration ("FAA"), U.S. Department of Transportation ("DOT"), Eric Holder, Jr., Jose Angel Moreno, Catherine Emerson, David Weingart, David Grizzle, Sasha Johnson, Fanny Rivera, Margaret Gilligan, Christa Fornarotto, and Paula R. Lewis (Document No. 40). Plaintiff has not filed responses to oppose any of these motions, nor has she moved to amend once again her Amended Complaint to overcome the defects argued by

2

Defendants.[2]   After considering the motions, the applicable law,
and the pleadings on file, the Court concludes as follows.

## I.  Background

_Pro se_ Plaintiff and first-time flyer Lorrine Adamore
("Plaintiff") had a frustrating and emotionally charged day at the
William P. Hobby Airport in Houston on February 1, 2010, from where
she planned to fly to Chicago to visit her dying mother, Bernice
Adamore.  Her first problem was at the security checkpoint when the
Transportation Security Administration ("TSA") agent did not accept

---

[2] On October 11, 2011, Defendant Rick Perry ("Governor Perry")
filed an Advisory to the Court, Document No. 50, in which he
explains that he first served Plaintiff with a copy of his Motion
to Dismiss on August 9, 2011, but that it was returned to him
unclaimed on August 31, 2011.  _See_ Document No. 50 at 1 & ex. B.
Governor Perry further represents that he re-mailed the Motion to
Dismiss on September 1, 2011, via certified mail, return receipt
requested.  _See_ id. at 2.  According to track and confirm records
of the United States Postal Service, notice of this mailing was
left at Plaintiff's address on September 3, 2011, and was returned
unclaimed to Governor Perry on September 20, 2011.  _See_ id., ex. E.
Rule 5 provides that "[a] paper is served under this rule by . . .
mailing it to the person's last known address--in which event
service is complete upon mailing."  Fed. R. Civ. P. 5(b)(2)(C).
Plaintiff's _pro se_ status does not exempt her from compliance with
the procedural rules.  Birl v. Estelle, 660 F.2d 592, 593 (5th Cir.
1981) (citing Faretta v. California, 95 S. Ct. 2525, 2540 n.46
(1975)).  Therefore, Governor Perry's Motion to Dismiss was served
upon mailing it to Plaintiff's last known address provided by her
to the clerk of this Court.  Moreover, "[i]t is incumbent upon
litigants to inform the court of address changes, for it is
manifest that communications between the clerk and the parties or
their counsel will be conducted principally by mail.  In addition
to keeping the clerk informed of any change of address, parties are
obliged to make timely status inquiries."  Beene v. Alford, No.
1:09cv170, 2010 WL 2036464, at *1 (E.D. Tex. Mar. 23, 2010)
(quotation omitted).

Plaintiff's identification ("I.D."), which consisted of a State of Texas temporary I.D. and a State of Illinois notarized birth certificate from the Bureau of Vital Statistics.[3]  The TSA agent eventually allowed Plaintiff to pass after obtaining her fingerprints and conducting a search.[4]  By this time Plaintiff's Southwest Airlines flight to Chicago was already boarding.[5]  TSA officials summoned an airport transport cart to take Plaintiff directly to her gate, but the two airport personnel who operated the cart let her off at the wrong gate after arguing with each other about where the correct gate was located.[6]  Plaintiff did not realize this mistake until her brother called and informed her that her flight had already departed.  Plaintiff then sought help from a customer service representative for Southwest Airlines, who allegedly showed no sympathy for Plaintiff and told her that she was unable to book another flight that day without paying an additional fare of $600 for an upgraded seat.[7]  Plaintiff explained that she had no more money, her mother was dying, and she needed to get to Chicago; the Southwest agent then allegedly re-booked Plaintiff on a flight for the next day and threatened to charge her

---

[3] Document No. 5 at 3 ¶ 12; id. at 9 (Document No. 5-1 at 5).

[4] Id. at 9.

[5] Id.

[6] Id.

[7] See Document No. 5 at 10 (Document No. 5-1 at 6).

4

a fee to upgrade her ticket.[8]  Plaintiff was so distraught by the agent's refusal to place Plaintiff on another flight that same night at no extra charge and her demand for Plaintiff to leave the airport premises that Plaintiff "fell face forward to floor and started crying out Momma, Momma, Momma."[9]  Plaintiff left the airport after Houston Police Officers acquired a cab for her and contributed the funds necessary to pay the $40.00 fare for her ride home.[10]  Plaintiff later called Southwest Airlines to complain about her treatment at the airport, and Southwest Airlines re-booked Plaintiff on a flight "with a revised discounted ticket" for February 2, 2010.[11]  Plaintiff's mother died that day before Plaintiff was able to see her.[12]

Plaintiff filed this suit after hearing on the news that a Southwest Airlines pilot had held a flight at Los Angeles Airport (LAX) for twelve minutes to allow a grieving white grandfather to make his flight to see his dying grandson.[13]  According to the

---

[8] *See* id.  Plaintiff also alleges that there was a mix-up with her baggage, but does not allege that her baggage was permanently lost.  *See* Document No. 5 at 2-3 ¶¶ 8-10.

[9] Id. at 2 ¶ 8.

[10] Id. at 4 ¶ 14.

[11] Id. at 3 ¶ 11.  Plaintiff does not allege that she ultimately had to pay any additional money to get to Chicago.

[12] Id. ¶ 13.

[13] Document No. 5 at 3 ¶ 14.

internet news reports filed by Plaintiff as part of her pleadings, Mark Dickinson, who was delayed in security, "held back tears as he pleaded with TSA and Southwest Airlines staff to fast-track him through the lines that were moving like molasses.  Even though missing his flight could mean missing a final chance to see his grandson, no one seemed to care."[14]  However, "in the meantime, wife Nancy Dickinson had decided to call the airline to see if there was any way Southwest could hold the flight."[15]  Mark Dickinson was able to make the flight because the Southwest pilot had decided to wait for him.[16]

Plaintiff, a black female over the age of forty, who asserts that she is disabled, alleges that she was treated differently from Mark Dickinson and that she is entitled to over $41 million per count in damages.[17]  Plaintiff asserts attempted extortion for higher airfares, retaliation, and intentional infliction of emotional distress against the Southwest Defendants for the actions of their gate agent, and further asserts race, sex, and age

---

[14] Document No. 5, ex. 6 (Document No. 5-2 at 8).  As Plaintiff attached these documents to her amended complaint, they are considered a part of her pleadings.  *See* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

[15] Document No. 5, ex. 8 (Document No. 5-2 at 10).

[16] Id.

[17] Plaintiff seeks $41.5 million per count, and alleges at least nine counts against the numerous defendants named above.  See Document No. 5 at 11 (Document No. 5-1 at 7).

discrimination under the Civil Rights Act of 1964, Discrimination in Public Accommodations (42 U.S.C. 2000a *et seq.*),[18] 42 U.S.C. §§ 1983 and 1985, and violations of the Fourteenth Amendment of the United States Constitution, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and 18 U.S.C. §§ 241 and 242[19] against all Defendants.  Four general groups of Defendants have filed four motions to dismiss, asserting that Plaintiff has not stated a claim for which relief can be granted.[20]  Additionally, the Federal Defendants and Governor Perry challenge this Court's subject matter jurisdiction over Plaintiff's claims against them, asserting sovereign immunity.

_____

[18] The Court construes Plaintiff's "Discrimination in Public Accommodations" claim to refer to Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq*.

[19] Both 18 U.S.C. §§ 241 and 242 are criminal statutes; as such they are not enforceable in this civil action against any Defendant.  *See* Pierre v. Guidry, 75 F. App'x 300, 300 (5th Cir. Sept. 17, 2003) (unpublished op.) ("[Plaintiff] has no right to bring a private action under federal criminal statutes." (citations omitted)); *see also* Florence v. Buchmeyer, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007) (a plaintiff cannot enforce criminal statutes in a civil action); Phillips v. United Parcel Service, No. 3:10-CV-1197-G-BH, 2011 WL 2680725, at *10 (N.D. Tex. June 21, 2011) (neither 18 U.S.C. §§ 241 nor 242 conveys a private cause of action).  Accordingly, Plaintiff's claims under 18 U.S.C. §§ 241 and 242 will be dismissed against all Defendants for failure to state a claim for which relief can be granted.

[20] The four groups of Defendants are: (1) the "Southwest Defendants," comprising Southwest Airlines Corporation, Gene Kelly, and Marilee McInnis; (2) Rick Perry ("Governor Perry"), in his official capacity as Governor of the State of Texas; (3) the "City of Houston Defendants," comprised of the City of Houston, Mayor Annise Parker, and Mary Case; and (4) the "Federal Defendants," comprised of the TSA agent, and the several federal agencies and agency heads named above.

II.   <u>Legal Standards</u>

"Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice." <u>Warnock v. Pecos Cnty., Tex.</u>, 88 F.3d 341, 343 (5th Cir. 1996). Under Rule 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The burden of establishing subject matter jurisdiction is on the party seeking to invoke it. <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001). Rule 12(b)(1) challenges to subject matter jurisdiction come in two forms: "facial" attacks and "factual" attacks. *See* <u>Paterson v. Weinberger</u>, 644 F.2d 521, 523 (5th Cir. 1981); <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1528-29 (11th Cir. 1990). A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges the court's jurisdiction based solely on the pleadings. <u>Paterson</u>, 644 F.2d at 523. When presented with a facial challenge to subject matter jurisdiction, the court examines whether the allegations in the pleadings are sufficient to invoke the court's subject matter jurisdiction, assuming the allegations to be true. <u>Id.</u>; <u>Simmang v. Tex. Bd. of Law Examiners</u>, 346 F. Supp. 2d 874, 880 (W.D. Tex. 2004). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court should consider the Rule 12(b)(1)

jurisdictional attack before addressing the attack on the merits. <u>Ramming</u>, 281 F.3d at 161; *see also* <u>Simmang</u>, 346 F. Supp. 2d at 880.

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* <u>Scheuer v. Rhodes</u>, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* <u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727 (1982).  The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  <u>Id.</u>

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* <u>Lowrey v. Tex. A&M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right

9

to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).

"If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, the proper remedy is a motion for a more definite statement under Rule 12(e)." <u>Beanal v. Freeport-McMoran, Inc.</u>, 197 F.3d 161, 164 (5th Cir. 1999). "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." F<small>ED</small>. R. C<small>IV</small>. P. 12(e). The motion "must point out the defects complained of and the details desired." <u>Id.</u>

### III.   <u>Motions to Dismiss</u>

A.   <u>Southwest Defendants</u>

The Southwest Defendants move to dismiss under Rule 12(b)(6), asserting that Plaintiff has not stated a valid claim against them.[21]

#### 1.   <u>Plaintiff's Tort Claims</u>

Plaintiff alleges that the Southwest Defendants are liable for intentional infliction of emotional distress and attempted

---

[21] Document No. 21 at 9.

extortion of higher air fares, based on the actions of their customer service representative, whom Plaintiff calls "Christina Doe."  The Airline Deregulation Act preempts state tort claims when they "relate to" airline services.  49 U.S.C. § 41713(b)(1) ("[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . .").  The Supreme Court has construed this provision broadly to preempt all state law claims that have "a connection with or reference to" an airlines's rates, routes, or services.  *See* Morales v. Trans World Airlines, Inc., 112 S. Ct. 2031, 2037 (1992).  Whether the Airline Deregulation Act preempts Plaintiff's attempted extortion and intentional infliction of emotional distress claims therefore depends upon whether the claims refer to or have a connection with Defendants' services.

The Airline Deregulation Act does not define the term "service," but the Fifth Circuit has held that it includes "'items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself.'"  Casas v. Am. Airlines, Inc., 304 F.3d 517, 525 (5th Cir. 2002) (quoting Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995) (en banc)).  "Undoubtedly, boarding procedures are a service rendered by an airline," and courts agree that an intentional tort claim premised upon an airline's boarding

practices, such as an airline's decision to prevent a passenger from boarding a flight, relates to an airline service and is therefore preempted by the Airline Deregulation Act.  <u>Smith v. Comair, Inc.</u>, 134 F.3d 254, 259 (4th Cir. 1998) (citations omitted).

The Airline Deregulation Act does not, however, preempt intentional tort claims premised upon an airline's unreasonable conduct too tenuously related or unnecessary to the provision of an airline service.  <i>See</i> <u>id.</u> (citing <u>Rombom v. United Air Lines, Inc.</u>, 867 F. Supp. 214, 221-22 (S.D.N.Y. 1994) (explaining that preemption occurs where (1) the activity at issue in the claim is an airline service, (2) the claim directly affects that service, and (3) the service was provided in manner that falls within a spectrum of reasonable conduct)).

Plaintiff's attempted extortion and intentional infliction of emotional distress claims are based on Plaintiff's allegations that Christina Doe "denied the [Plaintiff] any flight out not paid for upgraded for future flying and demanded for the [Plaintiff] to leave the airport premises . . . ."[22]  Both of these state law claims are preempted.  Airline agents often deal with passengers who have missed their flights and have to handle re-booking and re-ticketing decisions as a matter of course; these activities relate to "services" or "rates" within the meaning of the Airline

---

[22] Document No. 5 at 2 ¶ 8.

Deregulation Act.  *See* <u>Onoh v. Northwest Airlines, Inc.</u>, 613 F.3d 596, 599-600 (5th Cir. 2010) (plaintiff's intentional infliction of emotional distress claim based on airline agent's refusal to allow plaintiff to board the plane "related to" airline services); <u>Travel All Over the World, Inc. v. Kingdom of Saudi Arabia</u>, 73 F.3d 1423, 1434 (7th Cir. 1996) (finding that "services" included all elements of the air carrier service bargain and holding an airline's refusal to transport passengers who had booked their flights through a travel agent, rather than the airline itself, related to airline services).  "Yet the proper examination under <u>Morales</u> is not why the airline refused to provide its services, but whether the claims at issue either expressly refer to the airline's services (which they clearly do) or would have a significant economic effect on the airline's services."  <u>Travel All Over the World</u>, 73 F.3d at 1434 (citing <u>Morales</u>, 112 S. Ct. at 2039).  Plaintiff labels Christina Doe's refusal to issue a new ticket free of charge as "attempted extortion," but her cause of action centers around a dispute over the rate, or price, of a ticket and the availability of a discount seat on an airplane, which directly relates to "services, rates, or routes" and is preempted under the Airline Deregulation Act.  *See* <u>Morales</u>, 112 S. Ct. at 2040 ("In order for this marketing process to work, and for it ultimately to redound to the benefit of price-conscious travelers, the airlines must be able to place substantial restrictions on the availability of the lower priced seats

. . . .") .  Moreover, Plaintiff pleads that Southwest Airlines re-issued a ticket to Chicago for a flight on the next day, and does not allege that the new ticket cost her any more money.[23]

Accepting as true Plaintiff's allegations that Christina Doe was "very hostile," "uncompassionate," and that she "threatened" Plaintiff with a higher fare and thereafter asked her to leave the premises, the agent's rude, demanding, and crass conduct in this context is not so unrelated to airline services that it falls outside the preemptive scope of the Airline Deregulation Act.  *See* Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d 391, 401 (S.D.N.Y. 2004) (holding that the Airline Deregulation Act preempted claims based on flight attendant's rude comments to plaintiff at the boarding gate because unprofessional conduct "cannot be categorized as outrageous or unreasonable"); Rombom, 867 F. Supp. at 223 (holding that Airline Deregulation Act preempted claims arising out of allegedly "rude" and unprofessional manner in which flight attendant instructed plaintiff to be quiet); Cannava v. USAir, Inc., Civ. A No. 91-30003-F, 1993 WL 565341, at *4-6 (D. Mass. Jan. 7, 1993) (holding that the Airline Deregulation Act preempted claims based on ticketing agent's conduct in grabbing and tearing up plaintiff's bereavement fare ticket, treating plaintiff rudely, and threatening to call airport security).  Accordingly,

---

[23] Document No. 5 at 3 ¶ 11.

14

Plaintiff's state tort claims are preempted by the Airline Deregulation Act and therefore must be dismissed.[24]

### 2. Race, Sex, and Age Discrimination Claims

Although Plaintiff's state tort actions against the Southwest Defendants are preempted by the Airline Deregulation Act, Plaintiff's claims for discrimination are not. *See, e.g.,* Farash v. Continental Airlines, Inc., 574 F. Supp. 2d 356, 365 (S.D.N.Y. 2008) (holding that plaintiff's claims for discrimination were not sufficiently related to airline rates, routes, or services and were therefore not preempted by the Airline Deregulation Act). Plaintiff asserts discrimination claims under 42 U.S.C. § 1983 (deprivation of rights), § 1985 (conspiracy to interfere with civil rights), and § 2000a *et seq.* (discrimination in public accommodations). Each of these statutes requires a plaintiff to plead facts to support intentional discrimination. *See* Malik v. Continental Airlines, Inc., 305 F. App'x 165, 169 (5th Cir. 2008).

---

[24] To the extent that Plaintiff alleges claims against Southwest Airlines and its supervisors based on vicarious liability, failure to train, and failure to supervise, such are derived entirely from Christina Doe's handling of Plaintiff's request to be placed on the next flight, directly implicate a boarding or ticketing decision, and are preempted by the Airline Deregulation Act because they relate to airline services. *See* Morales, 112 S. Ct. at 2037; *see also* Qayyum v. U.S. Airways, Inc., No. 3:08-0996, 2008 WL 4879401, at *4 (S.D.W.Va. Nov. 12, 2008) (holding that plaintiff's negligent supervision and training causes of action were preempted by the Airline Deregulation Act because they directly related to boarding decisions).

"Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993). Plaintiff's Amended Complaint does not state facts from which the Court may infer that any constitutionally or statutorily proscribed discrimination occurred. Plaintiff's subjective belief that Defendants discriminated against her on the basis of race, sex, disability, or age,[25] without specific facts pointing to impermissible bias as the motivation, is insufficient to maintain a claim of discrimination. See id.; Elliott v. Grp. Med. & Surgical Serv., 714 F.2d 556, 567 (5th Cir. 1983) ("a subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief"); Wherry v. BBWS, No. 7:09-CV-25-O, 2009 WL 513221, at *2 (N.D. Tex. Feb. 27, 2009) (holding that plaintiff's "mere suspicion or belief" of defendant's discriminatory intent is not enough to prevent a motion to dismiss); Drake v. St. Paul Travelers Ins., No. 6:08-CV-301, 2009 WL 815999 at * 7-8 (E.D. Tex. Mar. 26, 2009) (holding that plaintiff's conclusory allegations were insufficient to state a claim because he offered no reason to suspect that the defendant's

---

[25] 42 U.S.C. § 2000a prohibits discrimination on the basis of "race, color, religion, or national origin," but does not list sex or age as prohibited grounds. See 42 U.S.C. § 2000a. However, 49 U.S.C. § 40127 prohibits discrimination in air travel "on the basis of race, color, national origin, religion, sex, or ancestry." 49 U.S.C. § 40127. Both statutes require proof of intentional discrimination. Malik, 305 F. App'x at 169.

actions had anything to do with the plaintiff's protected class). Because Plaintiff does not plead any facts to suggest that race, sex, disability, or age had any connection to her treatment at the airport, Plaintiff's discrimination claims are subject to dismissal. *See* <u>Malik v. Continental Airlines, Inc.</u>, 305 F. App'x 165, 170 (5th Cir. 2008) (unsupported speculation that the airline's treatment of plaintiff was evidence of intentional discrimination, based only upon the fact that the plaintiff was a minority, is insufficient to support a plaintiff's discrimination claims). Plaintiff's discrimination claims must therefore be dismissed.

Plaintiff also alleges a retaliation claim against the Southwest Defendants, presumably under 42 U.S.C. 2000a-2, which provides:

> No person shall . . . (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person with the purpose of interfering with any right or privilege secured by section 2000a or 2000a-1 of this title, or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 2000a or 2000a-1 of this title.

42 U.S.C. 2000a-2. To support her retaliation claim, Plaintiff alleges that Christina Doe on "02/01/10 at Southwest Airline Corporation [at] Hobby Airport in the city did make her threats

17

effective by depriving the Movant of Rights."[26]  Plaintiff does not plead facts to indicate that she was subjected to discrimination on the basis of race, color, religion, or national origin, and further does not allege facts to indicate that Christina Doe threatened or punished her for exercising her rights under 42 U.S.C. § 2000a to be free from acts of discrimination on those grounds.  Therefore her retaliation claim is subject to dismissal.

Additionally, Plaintiff has not stated a valid discrimination claim against the Southwest Defendants under 42 U.S.C. § 1983 because the Southwest Defendants are not state actors.  *See* West v. Atkins, 108 S. Ct. 2250, 2254-55 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." (citations omitted)); *see also* Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 252-53 (5th Cir. 2005) (same). Accordingly, Plaintiff's § 1983 claim against the Southwest Defendants will be dismissed.

Plaintiff also does not state a claim against Southwest Defendants or any other Defendant under Title 42 U.S.C. § 1985. Plaintiff cites § 1985 without specifying any of its three

---

[26] Document No. 5-9 at 1.

subsections, but evidently relies on § 1985(3).[27]  To state a claim under Section 1985(3), Plaintiff must allege:

> (1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus.

Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261, 270 n.12 (5th Cir. 2001) (quoting Wong v. Stripling, 881 F.2d 200, 202-03 (5th Cir. 1989)).   To support her claims under § 1985, Plaintiff alleges: "Movant(s) were deprived of privileges/rights and equal protection of the laws, ordinances, regulations, codes, U.S. statu[t]es for the city of Houston, state of Texas by the Defendant(s) on 02/01/10."[28]  Plaintiff does not allege that two or more specific persons agreed to deprive her of any rights, nor does she allege "a racial or otherwise class-based invidiously discriminatory animus behind the conspirators' action." Bradt, 634

---

[27] Section 1985(1) cannot apply because Plaintiff is not a federal official, see Benningfield v. City of Houston, 157 F.3d 369, 278 (5th Cir. 1998) and Section 1985(2) is inapposite because no conspiracy between two or more people "to deprive the plaintiff of [her] right in [federal] court by physical or economic means." Mitchell v. Johnson, No. 07-40996, 2008 WL 3244283, at *4 (5th Cir. Aug. 8, 2008).

[28] Document No. 5-5 at 1 ("Count # (04) Title 42 U.S.[C.] § 1985 Conspiracy to Interfer[e] With Rights.").

F.2d at 801 (citing <u>Griffin v. Breckenridge</u>, 91 S. Ct. 1790, 1795-98 (1971)).  As previously observed, Plaintiff does not plead any facts to support claims of racial bias on the part of any of Defendants.  Therefore, Plaintiff has stated no cause of action under § 1985 upon which relief may be granted.  Accordingly, Plaintiff's claim under 42 U.S.C. § 1985 will be dismissed as to all Defendants.

        3.   <u>Americans with Disabilities Act Claim</u>

        Plaintiff also asserts a claim against the Southwest Defendants under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182(a) *et seq.*[29]  Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, service, facilities, privileges, advantages, or accommodations of any place

---

        [29] Although governmental entities may be found liable under Title II for violations of the Act, Plaintiff does not allege that she was subjected to discrimination or lack of accommodation based on any actions or omissions of the state or municipal entities listed in this case.  Therefore, any claim under the Americans with Disabilities Act against Governor Perry and the City of Houston Defendants will be dismissed.  Further, as discussed below, the Federal Defendants have not waived sovereign immunity for monetary damages under the Americans with Disabilities Act, and therefore Plaintiff's claim against them fails as a matter of law.  *See* 42 U.S.C. § 12131 (defining "public entity" to include local or state governmental entities and omitting federal governmental entities from the definition); *see also* <u>Sherman v. Black</u>, 510 F. Supp. 2d 193, 197 (E.D.N.Y. 2007), *aff'd*, 315 F. App'x 347 (2d Cir. 2009) (Title II of the Americans with Disabilities Act does not apply to the federal government).

of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To assert a viable claim under Title III, Plaintiff must plead facts to allege that: (1) she has a disability within the meaning of the Act; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the plaintiff was denied public accommodations by the defendant because of her disability. Griffin v. Public Access Comm. Television, 2010 WL 3815797, at *1 (W.D. Tex. Sept. 27, 2010) (citing 42 U.S.C. § 12182(a)). Although Plaintiff summarily states that she is disabled, she does not identify her disability and pleads no facts linking her alleged disability to any mistreatment or lack of accommodation. Plaintiff fails to plead facts beyond "labels and conclusions" that would "raise [her] right to relief above a speculative level," and therefore fails to state a claim for which relief may be granted under the Americans with Disabilities Act. Twombly, 127 S. Ct. at 1964-65.

B.   The Federal Defendants

Plaintiff's claims against the Federal Defendants include: (1) discrimination in public accommodations, 42 U.S.C. § 2000a; (2) violations of the Americans with Disabilities Act; (3) violations of 42 U.S.C. §§ 1983 and 1985; (4) extortion; (5) vicarious liability in respondeat superior; (6) retaliation; and (7) violations of the Fourteenth Amendment.

Plaintiff generally alleges extortion against all Defendants (although Southwest seems to be the real target for this claim). Tort claims against the Federal Defendants, that is, claims for money damages for injury or loss of property "caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment," including any claims based on vicarious liability or respondeat superior, must be brought under the Federal Tort Claims Act.  28 U.S.C. § 2675.  This is the "exclusive vehicle for the assertion of tort claims for damages against the federal government."  In re Supreme Beef Processors, Inc., 468 F.3d 248, 252 (5th Cir. 2006) (en banc) (citing 28 U.S.C. §§ 2679(a)-(b)(1)). Plaintiff does not allege that she exhausted her administrative remedies as required by the Federal Tort Claims Act under 28 U.S.C. § 2675(a); therefore any of her claims that lie in tort are subject to dismissal.

Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985 do not apply to the Federal Defendants.[30]  See Resident Council of Allen Parkway Village v. U.S. Dept. of Housing and Urban Dev., 980 F.2d 1043, 1053 (5th Cir. 1993), cert. denied, 114 S. Ct. 75 (1993) (federal officials acting under color of federal law are not subject to suit under § 1983); Biase v. Kaplan, 852 F. Supp. 268,

---

[30] Further, as discussed previously, Plaintiff does not state a claim against any defendant, including the Federal Defendants, under 42 U.S.C. § 1985.  See supra at 19-21.

280 (D.N.J. 1994) ("[N]either § 1985 nor any other provision of the Civil Rights Act may provide the basis for an action against the United States or a Federal agency."); *see also* <u>Graves v. United States</u>, 961 F. Supp. 314, 318 (D.D.C. 1997) (United States may not be sued pursuant to 42 U.S.C. § 1985).

Plaintiff's claims for monetary damages under 42 U.S.C. § 2000a and the Americans with Disabilities Act are barred by sovereign immunity. "The doctrine of sovereign immunity is inherent in our constitutional structure and . . . renders the United States [and] its departments . . . immune from suit except as the United States has consented to be sued." <u>Williamson v. U.S. Dept. of Agriculture</u>, 815 F.2d 368, 373 (5th Cir. 1987). "In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity." <u>United States v. Testan</u>, 96 S. Ct. 948, 954 (1976). "It is well settled . . . that a waiver of sovereign immunity must be specific and explicit and cannot be implied by construction of an ambiguous statute." <u>Petterway v. Veterans Admin. Hosp.</u>, 495 F.2d 1223, 1225 n.3 (5th Cir. 1974) (citations omitted). Nothing in the text of 42 U.S.C. § 2000a *et seq.* explicitly and unequivocally states that the federal government has waived its sovereign immunity. *See* 42 U.S.C. § 2000a *et seq.*; *see also* <u>Zhu v. Gonzales</u>, No. 04-1408(RMC), 2006 WL 1274767, at *5 (D.D.C. May 8, 2006) (Collyer, J.) ("42 U.S.C. §§ 2000a to 2000a-2 . . . do not explicitly state that the federal government has waived its sovereign immunity."); <u>Friday v.</u>

23

United States, No. 92-888-FR, 1993 WL 165656, at *2 (D. Or. May 7, 1993), *aff'd*, 21 F.3d 1113 (9th Cir. 1994) (the United States did not waive its immunity for constitutional torts such as discrimination in public accommodations under 42 U.S.C. § 2000a-2). Plaintiff's claims for money damages asserted under the Americans with Disabilities Act against the Federal Defendants is similarly infirm, because the "United States, its agencies, and employees are not public entities under the ADA." Sherman v. Black, 510 F. Supp. 2d 193, 197 (E.D.N.Y. 2007), *aff'd*, 315 F. App'x 347 (2d Cir. 2009); *see also* 42 U.S.C. § 12131(1) ("public entities" are defined in Title II of the Americans with Disabilities Act to include state and local government entities but do not mention federal government entities).

Likewise, Plaintiff's constitutional claims for money damages are also barred by sovereign immunity, except insofar as she can state a claim against a specific government agent in his individual capacity pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 91 S. Ct. 1999 (1971), which she has not done. *See* F.D.I.C. v. Meyer, 114 S. Ct. 996, 1005-06 (1994) (holding that a Bivens action may be brought against individual federal agents but not against federal agencies); Garcia v. United States, 666 F.2d 960, 966 (5th Cir. 1982), *cert. denied*, 103 S. Ct. 73 (1982) ("[A] suit for damages against the United States based on the Constitution is not contemplated by Bivens and its progeny.");

24

Reinbold v. Evers, 187 F.3d 348, 355 n.7 (4th Cir. 1999) ("While Bivens actions allow for recovery of money damages against federal officials who violate the United States Constitution in their individual capacities, Bivens does not allow for recovery of money damages, or suits in general, against the government itself." (citing Keene Corp. v. United States, 700 F.2d 836, 845 n.13 (2d Cir. 1983))); Nwangoro v. Dept. of the Army, 952 F. Supp. 394, 397 (N.D. Tex. 1996) ("The United States has not, however, waived its sovereign immunity with respect to constitutional torts.").

The only allegations in Plaintiff's complaint that specifically apply to any individual federal employee are:

> T.S.A. caused a major delay for movant to initially board the plane on 02-01-10 because their employee, agent who spoke broken English had an[sic] language barrier and could not understand the movant's identification documents and refused to allow the movant to pass through his area(s) stating he could not and would not accept my state of Texas government issued temporary I.D. along with my birth certificate from Chicago Illinois causing the movant to miss the initial flight scheduled for 02/01/10 and be at bedside with mother while she was alive.[31]

Plaintiff's complaint against the TSA agent at the security checkpoint, whom she calls "John Doe TSA agent," is based on the delay caused by the agent's initial rejection of Plaintiff's I.D. TSA agents are charged with maintaining the security of air transportation and routinely must verify passengers' identities and

---

[31] Document No. 5 at 3 ¶ 12.

allow only authorized individuals to pass.[32]  In fact, the TSA agent
had a duty to check Plaintiff's I.D., ask Plaintiff questions, or
subject her to a search in order to assess whether she was the
named ticket holder or posed a security threat.  *See* Corbett v.
United States, No. 10-24106-CIV, 2011 WL 1226074, at *5 (S.D. Fla.
Mar. 2, 2011) ("Congress tasked TSA with protecting the public from
violence and piracy aboard aircrafts." (citing 49 U.S.C.
§ 44903(b))).  The TSA information page which Plaintiff included as
an exhibit to her pleadings states:

> Passengers who do not or cannot present an acceptable ID
> will have to provide information to the Transportation
> Security Officer performing Travel Document Checking
> duties in order to verify their identity.  Passengers who
> are cleared through this process may be subject to
> additional screening.  Passengers whose identity cannot
> be verified by TSA may not be allowed to enter the
> screening checkpoint or onto an airplane.[33]

Plaintiff complains only that TSA delayed her and erred in deciding
that her I.D. was insufficient; she does not allege any connection
between that mistake, and her race, sex, age, or disability, or
that she suffered any other negative treatment because of her
protected class; hence Plaintiff fails to state any viable
constitutional Bivens claim against John Doe TSA agent.  Williamson
v. U.S. Dept. Of Agriculture, 815 F.2d 368, 381 (5th Cir. 1987)

---

[32] Document No. 5, ex. 1 (Document No. 5-2 at 2) (TSA "ID
Requirements for Airport Checkpoints").

[33] Document No. 5, ex. 1.

("The Constitution is not implicated unless the decision goes beyond mere error to an intentional or reckless disregard of the constitutional rights of the person against whom the administrative decision was made." (quotation omitted)).

Moreover, John Doe TSA agent's asserted qualified immunity defense protects him from liability for civil damages. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Kinney v. Weaver, 367 F.3d 337, 349 (5th Cir. 2004) (en banc); see also Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). As observed above, none of John Doe TSA agent's alleged actions rises to the level of a "clearly established statutory or constitutional right," and therefore the agent has qualified immunity. Plaintiff's action against "John Doe TSA" must therefore be dismissed.

C.   Claims Against Governor Perry

Plaintiff does not allege any wrongdoing by Governor Perry individually. He is not alleged to have been present at Hobby Airport nor to have directed any of the activities of which Plaintiff complains. To the extent that Plaintiff sues Governor Perry in his official capacity as the Governor of the State of

Texas, the Eleventh Amendment bars actions against a state entity in federal court by private parties seeking monetary relief, absent waiver by the State or abrogation by Congress. *See* <u>Ganther v. Ingle</u>, 75 F.3d 207, 209-10 (5th Cir. 1996) (Texas has not waived its immunity to claims arising out of intentional torts or its immunity to federal claims seeking monetary damages); <u>Aguilar v. Tex. Dept. of Criminal Justice</u>, 160 F.3d 1052, 1054 (5th Cir 1998), *cert. denied,* 120 S. Ct. 130 (1999) ("Section 1983 does not waive states' sovereign immunity . . . and Texas has not consented to this suit." (internal citations omitted)); <u>Chacko v. Tex. A & M Univ.</u>, 960 F. Supp. 1180, 1197-99 (S.D. Tex. 1997), *aff'd*, 149 F.3d 1175 (5th Cir. 1998) (state employees in their official capacities are immune from § 1983 claims for monetary relief); <u>Baldwin v. Univ. of Tex. Med. Branch at Galveston</u>, 945 F. Supp. 1022, 1030 (S.D. Tex. 1996) ("Congress did not abrogate the states' Eleventh Amendment immunity by enacting 42 U.S.C. §§ 1981, 1983, and 1985."). Where the state has not consented to suit, the Eleventh Amendment bars a claim for money damages from state employees in their official capacity. *See* <u>Oliver v. Scott</u>, 276 F.3d 736, 742 (5th Cir. 2002). Therefore, Plaintiff's claims, for which she seeks monetary damages against Governor Perry in his official capacity as a state employee, are barred by the Eleventh Amendment and will be dismissed for lack of subject matter jurisdiction.

D.   <u>City of Houston Defendants</u>

Plaintiff names William P. Hobby Airport as a defendant, but the airport is not a corporate entity separate from the City of Houston, which owns it.  Plaintiff does not allege any wrongdoing or tortious conduct on the part of any of the City of Houston Defendants.  Plaintiff does allege that members of the Houston Police Department acquired a cab and paid the fare--$40.00--to provide her with a taxi ride home.  This charitable act does not state an actionable claim against the City of Houston or its employees under 42 U.S.C. §§ 1983, 1985, or any other cause of action.  Accordingly, Plaintiff's claims against the City of Houston Defendants will be dismissed for failure to state a claim upon which relief can be granted.

## IV.  <u>Order</u>

Accordingly, it is hereby

ORDERED that Defendants City of Houston's, Mayor Annise Parker's and Mary Case's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), ("City of Houston Defendants") (Document No. 20), Defendants Southwest Airlines, Co.'s, Gary Kelly's, and Marilee McInnis's (the "Southwest Defendants") Motion to Dismiss (Document No. 21), Defendant Rick Perry's Motion to Dismiss (Document No. 39), and the Motion to Dismiss by Defendants U.S. Department of Homeland Security ("DHS"), Transportation Security Administration ("TSA"), Federal Aviation Administration

("FAA"), U.S. Department of Transportation ("DOT"), Eric Holder, Jr., Jose Angel Moreno, Catherine Emerson, David Weingart, David Grizzle, Sasha Johnson, Fanny Rivera, Margaret Gilligan, Christa Fornarotto, and Paula R. Lewis (the "Federal Defendants") (Document No. 40), are all GRANTED, and all causes of action against the City of Houston Defendants, the Southwest Defendants and "John Doe TSA," are DISMISSED WITH PREJUDICE, and all claims against Rick Perry and the remaining Federal Defendants are DISMISSED for lack of subject matter jurisdiction.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas, on this <u>15th</u> day of December, 2011.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE